IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. 13-CV-00294-C |
| § | |
| § | |
| ALL FUNDS ON DEPOSIT § | |
| AT OLD MUTUAL OF BERMUDA, LTD. § | |
| CONTRACT NUMBER CX4011696 § | |
| IN BERMUDA § | |
| § | |
| Defendant, § | |

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, Plaintiff, files this action for forfeiture against all funds on deposit at Old Mutual of Bermuda, Ltd., Contract Number CX4011696, held at Old Mutual, Ltd., located at Cumberland House, 6th Floor, 1 Victoria Street, Hamilton 11, Bermuda HM, and alleges on information and belief that:

## NATURE OF ACTION

1. This is a civil action in rem brought to enforce the provisions of: (a) 18 U.S.C. § 981(a)(1), which provides for the forfeiture of personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960 or any property traceable to such property; (b) 18 U.S.C. § 981(a)(1)(c) which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1956(c)(7)(B)(iv) and 18 U.S.C. § 1961(1), including property that is derived from bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official; and (c) 18 U.S.C. § 981(a)(1)(c) which provides for the

forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344 or a conspiracy to commit such offense.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355. This court has *in rem* jurisdiction over Defendant Property under 28 U.S.C. § 1355(b) and §1355(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## DEFENDANT PROPERTY

3. The property subject to forfeiture are all funds on deposit at Old Mutual of Bermuda, Ltd., Contract Number CX4011696, held at Old Mutual, Ltd., located at Cumberland House, 6th Floor, 1 Victoria Street, Hamilton 11, Bermuda HM (hereinafter referred to as "Defendant Property"). As of September 16, 2013, Defendant Property consisted of $2,762,066 on deposit at Old Mutual of Bermuda, Ltd., Contract Number CX4011696.

## FACTS

4. Jorge Juan TORRES Lopez (hereinafter referred to as "TORRES") has been employed in the Mexican government from 1994 to 2011, including work as the General Director of the Promotion and Development, the Secretary of Finance for the state of Coahuila, Mexico, the Municipal President of Saltillo, Mexico, and the interim Governor of Coahuila, Mexico. In approximately December 2005, Hector Javier Villarreal Hernandez (hereinafter referred to as "Villarreal") was appointed to the position of Under Secretary of Program and Budget for the state of Coahuila. Villarreal began his political career in 2005 with TORRES (who was at the time the Secretary of Finance of Coahuila) as his boss. In July 2008, Villarreal was appointed to

2

the position of Secretary of Finance for the state of Coahuila. Villarreal was the Secretary of Finance until his resignation in August 2011.

5. All appointed government employees, such as TORRES and Villarreal, are required to provide financial disclosures each year about their annual income, assets, and liabilities. As the Secretary of Finance for the State of Coahuila, TORRES and Villarreal earned approximately $100,000 pesos a month ($8,172.94 U.S. dollars based on the historical average exchange rate from 2005 to 2011).

6. During his time in office, Villarreal became a subject of investigation by the Government of Mexico. On October 28, 2011, the State of Coahuila charged Villarreal with forging state documents to obtain fraudulent loans for several million pesos between 2008 and 2011. On October 29, 2011, Villarreal was arrested in Mexico and released on bond. Mexican government authorities charged Villarreal and other co-conspirators with acquiring loans by providing false information to Mexican banks. The false information involved the use of false registry stamps or previously approved registry stamps used on the false loan contracts. The investigation by the State of Coahuila and Mexican authorities includes three fraudulent loans from two different Mexican banks from July 2010 to March 2011 totaling over $3,000,000,000 Mexican Pesos ($246,000,000 U.S. dollars based on exchange rates on the dates of the loans). Mexican authorities later issued an arrest warrant for Villarreal. Villarreal fled to the United States after that and remains a fugitive from Mexico.

7. After Mexico's investigation was underway, U.S. agents uncovered evidence that in 2008 both TORRES and Villarreal opened accounts in the United States at J.P. Morgan Chase Bank in Brownsville, Texas. The accounts that were opened included TORRES's J.P. Morgan

Chase account xxxx8349 and Villarreal's J.P. Morgan Chase account xxxx4601. TORRES and Villarreal opened the accounts after TORRES and Villarreal had a joint meeting (where both TORRES and Villarreal were present) in Mexico in 2008 with bankers from J.P. Morgan Chase. The purpose of the meeting in Mexico among TORRES, Villarreal, and the bankers was to establish multiple offshore annuity accounts in Bermuda. One of those accounts is Defendant Property. Also, TORRES opened an account at Inter National Bank in McAllen, Texas in October 2007. During the meeting in Mexico, TORRES specifically asked one of the J.P. Morgan Chase bankers if the wire transfers could be deleted from the system so that no transfer would be seen going from Mexico to Bermuda through the United States.

8. The J.P. Morgan Chase bankers who were present at the Mexico meeting mentioned above stated that the business relationship between TORRES and Villarreal appeared to be a close relationship. This opinion was based on the bankers' observations of Villarreal and TORRES and the representations made to them by Villarreal and TORRES during the meeting.

9. During the opening procedures of the above-mentioned accounts, TORRES gave bankers at J.P. Morgan Chase and at Inter National Bank several different explanations regarding the source of his income and the funds that were to be placed in the accounts. Specifically, between October 2007 and April 2008, TORRES stated to bankers that his income was from: (1) an accounting firm that TORRES was employed at prior to beginning his government service in 1994; (2) owner of CEMEX Concrete Company (hereinafter referred to as "CEMEX") in Mexico; (3) income as an "accountant"; (4) and his work as a "business administrator" for a company known as Licenciado en Administration de Empresas ("L.A.E.").

10. TORRES has never been an owner of CEMEX. CEMEX's main offices are located

in Monterrey, Mexico and the company has one manufacturing (mixing) plant in the State of Coahuila. However, the CEMEX plant in Coahuila has only been registered with the Mexican government since 2013. Further, TORRES never produced any documentation to J.P. Morgan Chase showing CEMEX as a source of funds. Also, although he verbally told the bankers at J.P. Morgan Chase about his alleged CEMEX income, TORRES did not list CEMEX as a source of funds on his initiating documents with J.P. Morgan Chase.

11. TORRES signed the signature cards in October 2007 at Inter National Bank to open account xxxx7819. At that time, TORRES failed to tell Inter National Bank that he was the current Secretary of Finance for Coahuila, Mexico. TORRES instead told Inter National Bank that he was the "business administrator" for L.A.E., never stating his political position in Mexico. TORRES also told Inter National Bank personnel to hold his statements at the McAllen bank office and specifically not to send the statements to his address in Mexico.

12. During the early part of 2008, a document containing the information from the first confirmation wire from J.P. Morgan Chase Bank regarding the Defendant Property was mailed to TORRES at his office address in Mexico. The wire transfer statement was regarding over $500,000.00 in transferred funds by TORRES from his Mexico account to Defendant Property. TORRES became extremely angry with a J.P. Morgan Chase banker because the statement was sent to him in Mexico. TORRES told the banker that TORRES was a public official and could not have details about Defendant Property disclosed in Mexico or to the public. TORRES, at that time, had a United States address, but TORRES did not want the paperwork sent to that address either. TORRES had his statements sent to the J.P. Morgan Chase banker's home address in Brownsville, Texas.

13. From February 2, 2008 until February 6, 2008, a series of three wires in Mexican pesos came into TORRES's J.P. Morgan Chase account xxxx8349. The pesos converted to U.S. dollars totaled $2,512,474. This was the same type of foreign exchange wires that was reflected in Villarreal's accounts. On January 11, 2008, Villarreal also purchased a Bermuda annuity (similar to Defendant Property) with JP Morgan Chase with over $2 million dollars.

14. On February 2, 2008, TORRES transferred $434,980 to Villarreal's personal savings account at J.P. Morgan Chase.

15. On February 11, 2008, TORRES authorized the transfer of $2,077,021.10 from TORRES's J.P. Morgan Chase account number xxx8439 to Defendant Property.

16. On March 6, 2008, Villarreal, using his personal savings account at J.P. Morgan Chase, sent $559,701.49 to TORRES's J.P. Morgan Chase account number xxxx8349. On March 10, 2008, the $559,701.49 was wired from TORRES's account number xxxx8349 to the Defendant Property.

17. In May 2008, JP Morgan Chase compliance officers became concerned about the rapid money movement in less than six weeks in TORRES's account xxxx8349. Compliance officers were also concerned with the same rapid money movement in Villarreal's account at J.P. Morgan Chase. Because of these concerns, in the Spring of 2008 J.P. Morgan Chase bank opened an internal investigation regarding TORRES's and Villarreal's accounts.

18. During the internal investigation in 2008, J.P. Morgan Chase personnel attempted to contact TORRES on multiple occasions to obtain an explanation for the millions of dollars in peso exchange wires moving through TORRES's account. However, J.P. Morgan Chase was not able to contact TORRES because TORRES's phone number was disconnected and TORRES did not return correspondence sent by U.S. mail. Because of TORRES's failure to communicate

with the bank, TORRES's J.P. Morgan Chase account was closed by the bank.

19. Also during the internal investigation in 2008, Villarreal gave several explanations in an attempt to explain the wire transactions in Villarreal's account and between Villarreal and TORRES's accounts. Specifically, Villarreal told J.P. Morgan Chase personnel:

(a) The $559,701.49 on March 6, 2008 from Villarreal to TORRES was because Villarreal had purchased a ranch in Mexico from TORRES and the money was from the settlement of that purchase agreement. Agents have discovered through a review of public source information that Villarreal has had no significant real estate assets in Mexico and there is no indication that Villarreal has ever purchased a ranch in Mexico.

(b) The money transfer on February 12, 2008 of $434,980 from TORRES to Villarreal was sent from TORRES by mistake. J.P. Morgan Chase bank records do not document a transfer or a request to transfer monies between TORRES and Villarreal which would have corrected the alleged mistake.

(c) When asked the source of the money, Villarreal stated that he was in business with TORRES selling planes for the State of Coahuila. Villarreal stated that he and TORRES would receive a commission off the sale of those planes.

(d) Villarreal told bank employees that Villarreal owned a Mercedes dealership.

20. In August 2012, a federal law enforcement agent interviewed TORRES. TORRES told the agent that TORRES had never done any kind of business with Villarreal. TORRES told the agent that he is currently retired after being employed for twenty years as a government

employee in Mexico. Prior to TORRES's government employment, TORRES stated that he was an "entrepreneur." TORRES generally explained that his "entrepreneur" business was involved in manufacturing. TORRES could not explain the nature of the manufacturing business. TORRES multiple times stated that TORRES had never done any business with Villarreal. TORRES stated that he had never purchased or sold anything to Villarreal. TORRES specifically denied having any money anywhere in the world other than two small accounts in the United States and accounts in Mexico. When specifically asked, TORRES did not tell the agent about Defendant Property.

21. On February 6, 2013, the United States government filed a verified complaint for forfeiture in rem regarding Villarreal's Bermuda annuity account in cause number C-13-033 in the Southern District of Texas. On February 20, 2013, just two weeks after the case involving Villarreal's Bermuda account was made public, TORRES attempted to transfer all funds in Defendant Property to a bank account TORRES had established at Deutsche Bank in Hamburg, Germany.

22. As the Secretary of Finance of Coahuila, TORRES earned the equivalent of approximately $73,000 (U.S. dollars) income for one entire year as a high-ranking public employee in Mexico. The highest level of income for a high-level state employee in Coahuila does not exceed $150,000 U.S. dollars a year. At the highest level of state government, the highest gross income TORRES could have legitimately made for the six year period would total approximately $900,000.

23. The Defendant Property was: (a) involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960 or any property traceable to such

property; (b) proceeds or was derived from proceeds traceable to a violation of 18 U.S.C. § 1956(c)(7)(B)(iv) and 18 U.S.C. § 1961(1), including property that is derived from bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official; and (c) proceeds or was derived from proceeds traceable to a violation of 18 U.S.C. § 1344 or a conspiracy to commit such offense.

## NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claim must be filed no later than 35 days from the date this complaint is sent in accordance with 18 U.S.C. § 985 and Rule G(4)(b).

An answer or motion under Fed. R.Civ.P. 12 must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this complaint.

## PRAYER

WHEREFORE, the United States of America prays that judgment of forfeiture be entered against the Defendant Property in favor of the United States of America and for such costs and other

relief to which the United States of America may be entitled.

        Respectfully submitted,

        KENNETH MAGIDSON
        United States Attorney

By:   s/ Julie K. Hampton
        JULIE K. HAMPTON
        Assistant United States Attorney
        State Bar No. 24032269
        Federal Bar No. 431286
        800 N. Shoreline Blvd., Suite 500
        One Shoreline Plaza
        Corpus Christi, Texas 78401
        (361) 888-3111

## VERIFICATION

I, Luis Reyna, a special agent with the Internal Revenue Service, hereby affirm and verify that the facts set forth in the foregoing Complaint for Forfeiture in Rem are true and correct to the best of my knowledge and belief.

Luis Reyna
Special Agent, IRS

Sworn and subscribed before me, the undersigned authority, on this 23rd day of September, 2013.



VANESSA GONZALEZ
MY COMMISSION EXPIRES
December 3, 2016

Notary Public in and for the State of Texas

My commission expires:
Dec. 3, 2016

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified Complaint for Forfeiture In Rem was mailed via certified mail or certified international mail, return receipt requested to:

1. J.A. "Tony" Canales
   Attorney for Jorge Juan Torres Lopez
   2601 Morgan Avenue
   Corpus Christi, TX 78405

3. Juan Jorge Torres Lopez
   via Mutual Legal Assistance Treaty
   C. Casadores 197
   Fracc. Las Cabañas
   Saltillo, Coahuila, Mexico 25255

4. Maria Carlota Llaguno De Torres
   via Mutual Legal Assistance Treaty
   C. Casadores 197
   Fracc. Las Cabañas
   Saltillo, Coahuila, Mexico 25255

on this the 24th day of September, 2013.

s/ Julie K. Hampton
JULIE K. HAMPTON
Assistant United States Attorney