UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-294 |
| | § | |
| ALL FUNDS ON DEPOSIT AT OLD | § | |
| MUTUAL OF BERMUDA LTD. | § | |
| CONTRACT NUMBER CX4011696 IN | § | |
| BERMUDA | § | |

## MEMORANDUM AND RECOMMENDATION

Pending is Plaintiff United States of America's motion for finding of fugitive disentitlement as to Claimant Jorge Juan Torres Lopez (Torres), pursuant to 28 U.S.C. § 2466 (D.E. 19). Claimants Torres and his wife, Maria Carlota Llaguna de Torres, responded to the motion and seek a stay of the civil forfeiture action (D.E. 22). For the reasons set forth below, it is respectfully recommended that Plaintiff's motion be denied without prejudice for refiling. It is further recommended that Claimants' motion to stay be denied without prejudice.

## JURISDICTION AND VENUE

This court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355. Venue is proper in this court because the acts or omissions giving rise to this forfeiture action occurred in the Southern District of Texas.

## BACKGROUND

On September 24, 2013 Plaintiff (or "the Government") filed a verified complaint for civil forfeiture in rem against all funds on deposit at Old Mutual of Bermuda, Ltd.,

Contract Number CX4011696 (the "Defendant Property").  As of September 16, 2013, the Defendant Property consisted of $2,762,066 on deposit at the bank in Bermuda HM (D.E. 1).

The Government alleges that in 2008 Claimant Torres and another man, Hector Javier Villarreal Hernandez (Villarreal), both high-level government employees in Mexico, opened accounts in the United States at J.P. Morgan Chase Bank in Brownsville, Texas.  Torres and Villarreal opened the accounts after first meeting with bankers from J.P. Morgan Chase in Mexico to discuss establishing multiple offshore annuity accounts in Bermuda.  One of those accounts is the Defendant Property.  During the meeting, Torres asked one of the bankers if wire transfers could be deleted from the system so that no transfer would be seen going from Mexico to Bermuda through the United States. Torres also told the bankers several different stories regarding the source of his income and the funds that were to be placed in the accounts.

The Government alleges that the defendant property was involved in a money laundering transaction or attempted money laundering transaction, or was derived from unlawful activity, an unlicensed money transmitting business, bribery of a public official, misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official, or from a racketeer influenced and corrupt organization or bank fraud, or from a conspiracy to commit one or more of the above offenses.  *See* 18 U.S.C. §§ 1956, 1957, 1960, 1961 and 1344.

On October 22, 2013 Torres and his wife filed a claim for the seized property pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and

Asset Forfeiture (D.E. 4-1).  Torres asserts that the defendant property belongs to him and his wife.

Torres and Villarreal were indicted in the Southern District of Texas on November 20, 2013 and charged with multiple counts of money laundering and bank fraud. Included in the indictment is a notice of criminal forfeiture of, among other property, the Defendant Property described above.  *United States v. Villarreal*, No. 2:13-CR-1075 (S.D. Tex., filed November 20, 2013).

Villarreal was arrested in February 2014 on an indictment out of the Western District of Texas and is in custody in the San Antonio Division of the Western District of Texas.  Torres has not been arrested and is reported to be in Mexico (Declaration of Alfredo Lujan, D.E. 19-1).

In its motion for disentitlement, the Government argues that Torres is evading the jurisdiction of the court by remaining in Mexico and that he is not entitled to contest the forfeiture of Defendant Property.  Claimants counter that (1) the civil forfeiture proceeding itself is barred by the statute of limitations; (2) Torres did not flee to Mexico because he has always lived in Mexico; (3) Torres has not been served with the indictment or been arrested; (4) the Government has not shown that there is a relationship between the seized property and the crime alleged in the indictment and (5) disentitlement of Torres will not dispose of the matter because his wife has filed a claim for the property as well.  Claimants seek a stay of the civil forfeiture action pending resolution of the criminal case.

**APPLICABLE LAW**

Authority for a court to disallow a person from using the resources of the federal courts to pursue a civil forfeiture claim related to a criminal proceeding is found 28 U.S.C. § 2466:

> (a)  A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—
>
> (1) after notice or knowledge of the fact that a warrant or process has been issued for apprehension, in order to avoid criminal prosecution—
>
> > (A) purposely leaves the jurisdiction of the United States;
> >
> > (B) declines to enter or reenter the United States to submit to its jurisdiction;
> >
> > (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and
>
> (b) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

The fugitive disentitlement doctrine was developed by courts to support dismissal of direct appeals by escaped criminal defendants and later was expanded by Congress to apply to civil forfeiture actions.  *Collazos v. United States*, 368 F.3d 190, 197-198 (2nd Cir. 2004)(citations omitted).  The doctrine is grounded in the notion that it is improper to permit a fugitive to pursue a claim in federal court where he might accrue a benefit, while simultaneously avoiding an action of the same court that might sanction him.  *United States v. $671,160.00 in U.S. Currency*, 730 F.3d 1051 (9th Cir. 2013).

The statute identifies the following prerequisites to disentitlement: (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had knowledge or notice of the warrant; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and (5) the claimant must have deliberately avoided prosecution by (A) purposefully leaving the United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant. *Collazos*, 368 F.3d at 198. Even when the requirements are satisfied, the statute does not mandate disentitlement. Rather, the decision whether to order disentitlement remains in the discretion of the trial court. *Id.*

It is undisputed in this case that a warrant has been issued for Torres' arrest and that he is not confined or being held in custody in another jurisdiction. The parties dispute whether Torres has knowledge or notice of the warrant, whether the seized property is related to the facts alleged in the criminal indictment and whether Torres is deliberately avoiding prosecution by remaining in Mexico.

## DISCUSSION

### A. Knowledge or notice of warrant

Claimants argue that Torres has not been served with the indictment or been arrested. While this is true, the statute does not require that a Claimant be served or arrested in order to be subject to an order of disentitlement. Neither actual notice nor actual knowledge of the fact that a warrant has been issued is required. *United States v.*

*$6,976,934.65 Plus Interest*, 554 F.3d 123, 129 (D.C. Cir. 2009).  "All the statute requires is knowledge of an arrest warrant's issuance or notice—that is, reason to know—of that fact."  *Id.*

Torres' counsel has knowledge of the indictment.  "[A] party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"  *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)(quoting *Smith v. Ayer*, 101 U.S. 320 (1879)).  *See, also, United States v. Villanueva-Diaz*, 634 F.3d 844, 852, n. 4 (2011)(imputing notice to counsel to his client is consistent with general principles of agency applicable to attorney-client relationship). Knowledge of the indictment by Torres' counsel should be imputed to Torres and a finding should be made that the Government satisfied its burden that Torres has notice of the indictment and warrant.

## B.  Relation of Seized Property to Criminal Indictment

The criminal case must be related to the civil forfeiture action and Claimants argue that the Government has not recited facts showing the relationship between the proceedings.  When deciding whether the two matters are related, a court looks at whether the facts that underlie the prosecution being evaded also form the basis of the forfeiture action.  *$6,976,934.65 Plus Interest*, 554 F.3d at 131.

The indictment charges Torres and Villarreal, with, among other things, execution and attempted execution of a scheme to defraud J.P. Morgan Chase Bank.  In Count Four of the indictment, Torres is charged with fraud related to the funding of an offshore annuity, and in furtherance of the scheme, causing approximately $2,512,474 to be

deposited into his J.P. Morgan Chase account xxxx8349.  *United States v. Villarreal*, No. 2:13-CR-1075 (S.D. Tex., filed November 20, 2013).  It is alleged that Torres' actions violated 18 U.S.C. §§ 1956(a)(2)(B)(i), 1956(a)(1)(B)(i), 1956(h), 1344 and 1343.

In the civil forfeiture complaint, the Government asserts that the Defendant Property was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960 and that the action is brought pursuant to the forfeiture statutes which provide for forfeiture of property involved in a transaction in violation of 18 U.S.C. §§ 1956 or 1344.  In addition, the complaint in the civil forfeiture case alleges that after the sum of $2,512,474 was wired into Torres' account xxxx8349, he authorized the transfer of $2,077,021.10 to Defendant Property and that property is the subject of the seizure.  It is clear that the criminal matter and civil forfeiture action are related and the Government has satisfied its burden on this issue.

## C.  Torres' Status as a Fugitive

Torres claims that he is not deliberately avoiding prosecution by remaining in Mexico because he lives in Mexico and has always lived in Mexico.  He argues that he cannot therefore be considered a fugitive.

"[S]tatutory disentitlement extends beyond common-law fugitives to encompass persons who may never previously have been in the United States but who know that they are subject to arrest in this country and who, therefore, refuse to enter its jurisdiction in order to avoid prosecution."  *Collazos*, 368 F.3d at 197.  Mere notice or knowledge of an outstanding warrant, coupled with a refusal to enter the United States, does not satisfy the statute.  *$6,976,934.65 Plus Interest*, 554 F.3d at 132.  The alleged fugitive must have

declined to enter or reenter the United States in order to avoid prosecution and it is the Government's burden to make that showing.  *Id.*

In *Collazos*, the Claimant/Defendant declined to appear at two depositions and correspondence between the parties indicated that she sought to avoid being deposed in the United States lest she be arrested on a pending criminal charge.  *Collazos*, 368 F.3d at 194.  She later declined to appear at her federal criminal trial and the court held that the totality of the circumstances indicated that Collazos chose not to enter or reenter the United States to face the pending criminal charges.  *Id.* at 201.

Similarly, in *United States v. $671,160.00 in U.S. Currency*, 730 F.3d 1051 (9th Cir. 2013), the Ninth Circuit Court of Appeals affirmed the district court's entry of a disentitlement order after finding that the claimant's self-enforced absence from the United States after he learned of the criminal complaint and warrant issued for his arrest stood in marked contrast to his extensive travel to California prior to the issuance of the pending criminal charge.  *Id.* at 1057.  It also was noted that the claimant was given multiple opportunities to personally appear to contest the application of the disentitlement statute but declined to do so.  *Id.* at 1055.

In other circumstances, courts have declined to find that the fugitive disentitlement doctrine should apply when it is not clear that a claimant is staying outside the United States in order to avoid criminal prosecution.  In *$6,976,934.65 Plus Interest*, the court found that the claimant had voluntarily left the United States several years before the criminal indictments were filed and the government did not satisfy its burden of showing that he had remained outside the United States in order to avoid the pending criminal

charges.  The only evidence offered by the government was video of an interview with the claimant where he acknowledged that he would probably be arrested if he returned to the United States but also stated that he did not mind if he never returned.  The district court made no finding as to what the comment revealed about the claimant's reasons for remaining outside the United States and the appellate court found that the statement raised a fact issue regarding whether the claimant remained outside the United States in order to avoid criminal prosecution.  *$6,976,934.65 Plus Interest,* 554 F.3d at 132.

Also, the court in *United States v. Salti*, 579 F.3d 656 (6th Cir. 2008), found that fact issues precluded a finding that the Government was entitled to a fugitive disentitlement order when the claimant offered evidence that his health was too poor to allow him to travel.  The claimant filed an affidavit regarding his extensive health problems along with a letter from his doctor stating that the claimant was too ill to travel. *Id.* 579 F.3d at 665-666.

In the instant case, the Government has not met its burden of showing that Torres is remaining outside the jurisdiction of the court in order to avoid criminal prosecution. There is no evidence regarding whether Torres regularly traveled to the United States prior to his indictment.  Although the J.P. Morgan Chase bank accounts were opened in Brownsville, Texas, Torres apparently met with bank officials in Mexico (D.E. 1 at 4). The Government also alleges that Torres was interviewed by a federal law enforcement agent in August 2012, but does not say where the interview took place (D.E. 1 at 7-8).

Fact issues preclude entry of an order of disentitlement at this time.  *See $6,976,934.65 Plus Interest,* 554 F.3d at 133 (in light of factual dispute regarding

claimant's intent to avoid criminal prosecution, court erred in granting summary judgment on the applicability of fugitive disentitlement).  Accordingly, it is recommended that the Government's motion for a finding of fugitive disentitlement be denied without prejudice for later filing.

### D.  Mrs. Torres' Claim

Claimants argue that even if Torres' claims is dismissed, Mrs. Torres' claim would remain and that a finding of disentitlement will not dispose of the case.  Assuming this is true, it does not affect the analysis of the fugitive disentitlement motion.

### E.  Timeliness of Forfeiture Action

Claimants argue that the civil forfeiture action was filed after the expiration of the statute of limitations.  However, the argument is not responsive to the motion for finding of fugitive disentitlement.  Claimants raised the limitations issue in their motion to dismiss (D.E. 7) and it will be addressed in a future Memorandum and Recommendation.

### F.  Stay of Civil Forfeiture Action

Claimants seek a stay of the civil forfeiture action pending resolution of the criminal matter, or, in the alternative, to allow the proceedings to go forward and consider their pending motion to dismiss (D.E. 7).  Claimants' motion to dismiss will be addressed and therefore it is recommended that their motion for stay be denied without prejudice.

### RECOMMENDATION

Based on the foregoing, it is respectfully recommended that the Government's Motion for Finding of Fugitive Disentitlement as to Jorge Juan Torres Lopez (D.E. 19) be

DENIED without prejudice for refiling.  It is further recommended that Claimants'
motion for stay, included in their response to the disentitlement motion, be DENIED
without prejudice for refiling.

      Respectfully submitted this 6th day of March, 2014.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

      The Clerk will file this Memorandum and Recommendation and transmit a copy to
each party or counsel.  Within FOURTEEN (14) DAYS of being served with a copy of
the Memorandum and Recommendation, a party may file with the Clerk and serve on the
United States Magistrate Judge and all parties, written objections, pursuant to Fed. R.
Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United
States District Court for the Southern District of Texas.

      A party's failure to file written objections to the proposed findings, conclusions,
and recommendation in a magistrate judge's report and recommendation within
FOURTEEN (14) DAYS of being served with a copy shall bar that party, except upon
grounds of plain error, from attacking on appeal the unobjected-to proposed factual
findings and legal conclusions accepted by the district court.  *Douglass v. United Services
Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).